UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**UNITED STATES OF AMERICA,**

v.                                                                    Case No. 8:24-cr-51-WFJ-AAS

**DEVIN ALAN RHODEN**
_____/

**SENTENCING MEMORANDUM IN SUPPORT OF A
<u>NON-INCARCERATION SENTENCE</u>**

COMES NOW, the Defendant, DEVIN ALAN RHODEN, through undersigned counsel and pursuant to U.S.S.G. §§ 5K1.1, 5H1.1, 5H1.11, 5K2.20, and 18 U.S.C. § 3553(a), files this Sentencing Memorandum moving this Court to grant the government's "substantial assistance" motion and to impose a low-end non-incarceration sentence of probation. As grounds in support, Mr. Rhoden states:

**FACTUAL AND PROCEDURAL HISTORY**

Devin Alan Rhoden is a 25-year-old nonviolent first-time offender and member of the United States Air Force who committed an aberrant offense involving a "rug pull" non-fungible token (NFT) investment scheme with his long-term online friend, Berman Jerry Newman, Jr. Mr. Rhoden's offense conduct was limited in duration (March 2022 – May 2022), was committed without significant planning, and represented a marked deviation from an otherwise law-abiding life. Mr. Rhoden and Mr. Nowlin's offense conduct, which occurred when they were young adults

1

(ages 18 and 22), caused a loss to investors of $130,843.71, with Mr. Rhoden receiving about one-half of the proceeds ($65,421.85).

### *History and Characteristics of Devin Alan Rhoden*

Devin Alan Rhoden was born on May 9, 1999, in Clearwater, Florida to Rebecca Ann Rhoden (age 51) and a father he has never met. PSR ¶70.[1] Devin was raised in a single parent household where his mother financially struggled. *Id*. Devin's childhood was plagued with poverty, paternal abandonment, maternal substance abuse, and domestic violence. Devin's mother, a massage therapist, did her best to support Devin and his younger maternal half-brother Christopher. PSR ¶¶ 70-72. But because of his mother's dire financial situation, as a child Devin and his brother were relegated to "terrible neighborhoods" where they often witnessed drugs, prostitution, and acts of violence. PSR ¶70. Given his mother's meager income, the family had to rely on government assistance programs like food stamps and Section 8 housing to meet their most basic needs. *Id*.

When Devin was 6, his mother's relationship with her boyfriend Robert Kline, resulted in the birth of his brother Christopher. PSR ¶75. Robert Kline was a violent and abusive man who often physically and emotionally abused Devin's mother in the presence of her children. *Id*. Following Mr. Kline's imprisonment, the

---

[1] Mr. Rhoden's 59-year-old mother is disabled with restricted mobility and a history of abusing opioid-based pain medications. PSR ¶71.

2

relationship ended but the abuses continued as Devin's mother consistently gravitated to equally abusive boyfriends who infected Devin's childhood home with domestic violence *Id*.

Devin recalls his mother's last boyfriend, Sean, being exceedingly violent toward both his mother and him. PSR ¶75. As described by Devin, Sean would violently punch holes in the walls and would repeatedly engage Devin in fist fights. *Id*. To escape this physical abuse, at 17, Devin moved out of his mother's home to live with his maternal grandmother. PSR ¶¶73, 75. As described by Devin, his mother was "emotionally and physically" unavailable for him and his younger brother, forcing him to undertake the role of second parent for his younger brother. PSR ¶72.

Despite having a childhood without a father, in a crime-infested neighborhood, filled with physical and emotional abuse, Devin was well behaved and avoided the negative trappings of drug use, gang activity, disciplinary issues at school, and repeated contacts with the juvenile justice system. PSR ¶¶63, 86-87, 90. Devin excelled in elementary and middle school, making the middle school honor role, participating in middle school football, and playing the drums and trumpet in the school band. PSR ¶90.

Not until high school did the abuse at home cause Devin's grades to drop; he eventually graduated from Palm Harbor University High School with a 2.5 GPA. *Id*.

3

As a result of childhood trauma, Devin now suffers from ADHD, depression, and anxiety with daily symptoms of anxiousness, overthinking, and stress. PSR ¶83.[2]

Following high school graduation, Devin enlisted in the United States Air Force. PSR ¶99. The Air Force provided Devin a haven from the poverty and abuse that had plagued his childhood. *Id.* In the military, for the first time in his life, Devin found stability with a steady income, and a means to lift himself out of the poverty-stricken existence he had experienced as a child. *Id*. While in the Air Force, Devin furthered his education by obtaining an associate degree in information technology, by obtaining an educational certificate as a cyber intrusion analyst, and by completing college course work in artificial intelligence and machine learning. PSR ¶¶91-94. Today, only because of the opportunities the military provided him, Devin is on track to receiving his bachelor's degree in software engineering. *Id*.

During his four years of military service (since July 2019), Devin has served his country honorably and without incident, reaching the rank of E-4 and earning a military salary of $5,400 per month. *Id*. Before his federal arrest, Devin's military duties included working as a Cyber Readiness Call Technician at MacDill Air Force Base (April 2022 – June 2024). *Id*. Devin held the rank of Staff Sergeant Select (which he lost following his federal arrest) and served under the command of the 6th

---

[2] Today, Mr. Rhoden's mental health conditions are managed through daily prescriptions for Ritalin (27 milligrams), Fluoxetine (20 milligrams), Bupropion (150 milligrams), and Hydroxyzine (10 milligrams as needed). PSR ¶83.

4

Communications Squadron at MacDill. *Id*. His duty title was Analyst, Mission Defense wherein his primary duties involved providing network services, cyber security, cyber vulnerability mitigation, analog configuration, threat assessment, and management. PSR ¶99.

While in the military Devin's superiors found that he exceeded expectations in all areas of performance including job proficiency, followship/leadership, and whole airmen concept. *Id*. Over the past four years Devin has achieved several accomplishments during his military service including being selected as a AFWERX working group cyber subject expert. *Id*. Additionally, during his four years of service, Devin has received a Letter of Appreciation from Colonel John Kelly (March 10, 2020); the Air Force Achievement Medal for Meritorious Service (May 19, 2021); and the Air Force Achievement Medal for Outstanding Achievement (January 25, 2022). PSR ¶¶100-101. While in the military, Devin's character was well respected, and he was entrusted with several high-level security clearances.

As described by Devin's uncle David Rhoden, it had always been Devin's lifelong dream to serve in the military and to work in cybersecurity for the United States Air Force. PSR ¶74. Since his federal arrest and conviction, Mr. Rhoden's uncle observed that Devin is devastated and disappointed in himself that his reckless criminal NFT conduct has cost him his military career and his ability to work in his chosen field. *Id*. As noted by his uncle, Devin has always been very "conscientious"

5

and "hard working" which makes his offense conduct out of character. *Id*.

On top of excelling academically and professionally in the Air Force, Devin has excelled in his personal life, having married his soulmate Katherine four years ago. PSR ¶77. Katherine is enrolled in college full-time as she pursues a nursing degree, which she is on track to obtain in May 2025. PSR ¶77. At 25, Devin has no prior criminal history and has lived an otherwise law-abiding life, having served his country honorably for the last 4 years. PSR ¶¶63-68. Because of his federal arrest and conviction, Devin's military career will end unceremoniously when he is discharged from the military immediately following sentencing by this Court. PSR ¶104.

While Devin has otherwise lived a law-abiding life, it is his out of character and limited in duration NFT offense conduct, which occurred over a two-month period in 2022, that brings him before this Court as a first-time young adult nonviolent offender.

### *Facts and Circumstances Surrounding Mr. Rhoden's Aberrant Nonviolent Offense Conduct*

Having presided over the trial of Mr. Rhoden's codefendant Berman Jerry Nowlin, Jr., which included Mr. Rhoden's testimony as a material witness for the government, this Court is aware of the facts and circumstances surrounding Mr. Rhoden's and Mr. Nowlin's nonviolent offense conduct. Those facts have also been captured in Mr. Rhoden's Presentence Investigation Report (*see* PSR ¶¶21-44) and

6

so will not be repeated here.

That said, for purposes of sentencing, it should be highlighted that Mr. Rhoden and Mr. Nowlin were young men (22 and 18) at the time of their offense conduct; the offense was limited in duration over a two-month period from March 2022 to May 2022; their NFT offense conduct occurred after successfully and lawfully minting two other NFT projects; and their joint offense conduct resulted in a relatively low loss amount of $130,834.71, which was shared equally between Mr. Rhoden and Mr. Nowlin.

Because of Mr. Rhoden and his childhood friend's unlawful conduct, on January 8, 2024, Mr. Rhoden was arrested on a criminal complaint charging him with money laundering and making false statements to a federal agent. Doc. 1. Upon appointment of counsel, Mr. Rhoden was released under the supervision of pretrial services and immediately began to cooperate with the government. Docs. 6, 9.

Mr. Rhoden's cooperative efforts contributed to the return of a February 6, 2024, federal indictment charging him and his childhood online friend, Berman Jerry Nowlin Jr., with conspiracy to commit wire fraud and money laundering, in violation of 18 U.S.C. § 371. PSR ¶¶1-2.

On May 24, 2024, pursuant to a written plea agreement containing a cooperation and low-end recommendation provision, Mr. Rhoden entered a guilty plea to the single-count indictment. PSR ¶¶4, 7, 9. On July 11, 2024, this Court

accepted Mr. Rhoden's guilty plea and adjudicated him guilty. PSR ¶11. In contrast, Mr. Rhoden's childhood friend and codefendant proceeded to trial, and following Mr. Rhoden's testimony for the government, was convicted as charged. Docs. 72, 76.

Mr. Rhoden's sentencing hearing is scheduled for Wednesday, November 20, 2024, at 10:00 a.m. Doc. 52.

## GUIDELINES CALCULATION

The Presentence Investigation Report has correctly determined Mr. Rhoden's total offense level to be 13. PSR ¶¶55-62. With no prior convictions, Mr. Rhoden has zero criminal history points and is a Criminal History Category I offender. PSR ¶65. With a Criminal History Category I and total offense level 13, Mr. Rhoden's advisory guideline imprisonment range is 12 to 18 months. PSR ¶108.[3]

On November 12, 2024, the government filed, pursuant to U.S.S.G. § 5K1.1, a "substantial assistance" motion seeking a 5-level downward departure. Doc. 79. If granted by this Court, a 5-level downward departure would place Mr. Rhoden's advisory sentencing range within Zone A making him eligible for a low-end sentence of probation. Mr. Rhoden is seeking a low-end sentence of probation between one

---

[3] Mr. Rhoden's advisory range is within Zone C of the Sentencing Table, making him eligible for a low-end sentence of 6 months in custody followed by a term of supervised released that has as a special condition he serve six months of home detention. PSR ¶109.

8

and five years. PSR ¶113.

## REQUEST FOR A NON-INCARCERATION SENTENCE

Given the mitigating history and characteristics of Mr. Rhoden, his cooperative efforts, as well as the facts and circumstances of the nonviolent nature of his offense, a non-incarceration sentence (1-5 years of probation), will be "sufficient but not greater than necessary" to accomplish the purposes of sentencing enumerated under 18 U.S.C. § 3553(a).

Mr. Rhoden is a 25-year-old nonviolent first-time offender who experienced a difficult and tragic childhood where he suffered paternal abandonment, poverty, domestic violence, physical abuse, maternal neglect, and was raised in neighborhoods plagued with crime, drugs, substance abuse, and violence. Despite these difficult childhood circumstances, Mr. Rhoden avoided the negative trappings of his drug and crime infested neighborhood with no prior juvenile or adult criminal justice systems adjudications.

Other than a two-month period when he was 22 years old, Mr. Rhoden has lived an otherwise law-abiding life having graduated from high school, obtained his associates degree, and served honorably in the United States Air Force where his performance has exceeded all expectations of his superior officers.[4] His offense was

---

[4] *See* U.S.S.G. § 5H1.11, which provides for a downward departure based on a defendant's military service, "if the military service, individually or in combination

9

limited (60 days), did not involve significant planning, and was aberrational.[5] Together with the aberrational nature of his offense, it also occurred when Mr. Rhoden was a 22 years old young adult which is a well-documented time when young individuals are generally more impulsive, risk-seeking, and more susceptible to outside influences as their brains continue to develop into young adulthood.[6]

Despite the aberrant nature of Mr. Rhoden's nonviolent offense conduct and the mitigating nature of his young age at the time of his offense, it cannot be disputed that his unlawful conduct of engaging in an NFT "rug pull" scheme, which caused a loss to victim NFT investors of $130,834,71, is a significant offense warranting

---

with other offender characteristics, is present to an unusual degree and distinguishes the case from the typical case covered by the guidelines."

[5] *See* U.S.S.G. § 5K2.20, which provides for an "aberrant behavior" downward departure where a defendant commits a single criminal occurrence or single criminal transaction that (1) was committed without significant planning; (2) was limited in duration; and (3) represents a marketed deviation by the defendant from an otherwise law-abiding life. In determining whether a court should depart the court may consider the defendant's (A) mental and emotional conditions; (B) employment record; (C) record of prior good works; (D) motivation for committing the offense; and (E) efforts to mitigate the effects of the offense.

[6] *See* U.S.S.G. § 5H1.1, which provides for a downward departure due to a defendant's youthfulness at the time of the offense. As noted by the Sentencing Commission, "Certain risks factors may affect a youthful individual's development into the mid-20's and contribute to involvement in the criminal justice systems, including environment, adverse childhood experiences, substance use, lack of educational opportunities, and familial relationships. In addition, youthful individuals generally are more impulsive, risk-seeking, and susceptible to outside influences as their brains continue to develop into young adulthood. Youthful offenders are amenable to rehabilitation."

punishment.

At the same time, given Mr. Rhoden's status as a first-time offender who lived a law-abiding life for the 22 years before his offense conduct during which he honorably served his county, a term of imprisonment of any length is greater than necessary to accomplish the 18 U.S.C. § 3553(a) purposes of sentencing. Becoming a convicted felon will adversely affect Mr. Rhoden for the rest of his life including the loss of his military career and future military-related benefits. This coupled with serving a lengthy term of community supervision, being ordered to pay restitution, and subjecting him to a $130,000 money forfeiture judgement will be a significant and life-changing penalty for Mr. Rhoden.

Since his offense conduct, Mr. Rhoden has taken significant rehabilitative steps by cooperating with the government, returning to living an otherwise law-abiding life, and entering a timely guilty plea. Since his offense conduct, which ended over two years ago, Mr. Rhoden has maintained lawful employment with the Air Force and has supported his wife as she attends college full time pursuing a career in nursing.

Under these circumstances, it is respectfully suggested that a term of imprisonment or even home detention is unnecessary to address the seriousness of Mr. Rhoden's aberrant criminal behavior, to deter him from future criminal conduct, or to generally deter others. A term of community supervision will reasonably

protect the public. Mr. Rhoden's pre- and post-offense conduct illustrates that he is at a very low risk to reoffend, and a community supervision sentence will effectively deter him from future criminal conduct.

Mr. Rhoden is a bright, respectful young man who did well in school despite his difficult childhood and has worked hard to excel during his military career. His offense was aberrational and driven by youthful impulsive risk-taking behavior. As observed by the Sentencing Commission:

> The age-crime curve, one of the most consistent findings in criminology, demonstrates that criminal behavior tends to decrease with age. Age-appropriate interventions and other protective factors may promote desistance from crime. Accordingly, in an appropriate case, the court may consider whether a punishment other than imprisonment might be sufficient to meet the purposes of sentencing.

U.S.S.G. § 5H1.1.

Because of youthful indiscretion and impulsivity Mr. Rhoden lost his moral compass, but only briefly. His risk-taking indiscretion has cost him a promising military career as well as any future career in his chosen profession of cyber security. Mr. Rhoden deeply regrets his isolated criminal behavior, and he has attempted to mitigate his wrongs through his cooperative efforts. He intends to pay back the victims of his offense conduct and with a community-based sentence, Mr. Rhoden will do just that; he never again intends to stray from the values the military has instilled in him.

WHEREFORE, the Defendant, DEVIN ALAN RHODEN, respectfully moves this Honorable Court to grant the government's 5-level "substantial assistance" motion and to impose a low-end non-incarceration sentence of probation between 1-5 years.

DATED this 14th day of November 2024.

Respectfully submitted,

FITZGERALD HALL, Esq.
FEDERAL DEFENDER

*/s/ Adam B. Allen*
Adam B. Allen, Esq.
Assistant Federal Defender
Florida Bar No. 0998184
Office of the Federal Defender
400 North Tampa Street
Suite 2700
Tampa, Florida 33602
Telephone: (813) 228-2715
Facsimile: (813) 228-2562
Email: Adam_Allen@fd.org

## **CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that on this 14th day of November 2024, a true copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send a notice of the electronic filing to Assistant United States Attorney Charlton Gammons.

                                        */s/ Adam B. Allen*
                                        Adam B. Allen, Esq.
                                        Assistant Federal Defender